# Exhibit 1

**Court Access Portal**

**Superior Court of California - County of San Bernardino**

**Case Summary (CIVSB2228148)**                    07/27/2023 18:21:44

---

## CIVSB2228148

COMPLEX- Class Action- Groff -v- Keurig Green Mountain, Inc

### Case Information

| | |
|---|---|
| **Case Type:** | Complex Civil Unlimited |
| **Case Number:** | CIVSB2228148 |
| **Citation Number:** | |
| **Filing Date:** | 11/29/2022 |
| **Case Status:** | Active |
| **Court Location:** | San Bernardino |
| **Judicial Officer:** | David Cohn |
| **Next Hearing:** | 8/22/2023 8:30AM Dept S26 - SBJC |

### Case Flags

| |
|---|
| |

### Demographic Information

| | |
|---|---|
| **Date of Birth** | |
| **Race:** | |
| **Sex:** | |
| **Height:** | #Error |
| **Weight:** | |
| **Hair Color:** | |
| **Eye Color:** | |
| **DL #:** | |
| **FBI #:** | |
| **State ID:** | |

### Address

| | |
|---|---|
| **Street Name:** | |
| **City:** | |
| **State:** | |
| **Zip:** | |

### Alias(s) / Nickname(s)

| |
|---|
| |

# Court Access Portal

**Superior Court of California - County of San Bernardino**

**Case Summary (CIVSB2228148)**                    07/27/2023 18:21:44

## Cross Reference

| | |
|---|---|
| | |

## Parties

| Type | Name | Status |
|---|---|---|
| Plaintiff | Groff, Christina<br>*ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED* | Active |
| Defendant | Keurig Green Mountain, Inc<br>*A DELAWARE CORPORATION* | Active |

## Attorneys

| Representing | Name |
|---|---|
| Christina Groff | **Milstein Jackson Fairchild & Wade, LLP** |

# Court Access Portal
**Superior Court of California - County of San Bernardino**

**Case Summary (CIVSB2228148)**                                     07/27/2023 18:21:44

## Events

| File Date | File Type | Filed By |
|---|---|---|
| 6/30/2023 | Amended Complaint Filed | Christina Groff |
| **Comment:** | 1st Amended Complaint filed by plaintiff on 06/30/23 | |
| 6/12/2023 | Order signed and Filed | |
| **Comment:** | Granting Request for Continuance of Case Management Conference Hearing | |
| 6/9/2023 | Filing Fee Paid by | Christina Groff |
| **Comment:** | $20.00 paid by ch for Plaintiff's Request for Cont of Initial CAse Managment Conf. taken up to Dept | |
| 6/9/2023 | Request for Continuance Filed | Christina Groff |
| **Comment:** | Re continuance of initial case management conference. | |
| 6/9/2023 | Document is Returned by Court for the Following Reason(s): | Christina Groff |
| **Comment:** | request for cont of initial cmc<br>request has already been sent up to the dept | |
| 4/14/2023 | Certificate of Assignment Received | |
| 4/4/2023 | Order Filed Re: | |
| **Comment:** | RE INITIAL COMPLEX CASE MANAGEMENT CONFERENCE. | |
| 4/4/2023 | Correspondence Coversheet Generated to Mail: | Milstein Jackson Fairchild & Wade, LLP |
| **Comment:** | INITIAL COMPLEX ORDER AND GUIDELINES. | |
| 3/27/2023 | Summons Issued and Filed | Christina Groff |
| **Comment:** | Filed by plaintiff Christina Groff, et al on complaint filed 11/29/22 | |
| 3/27/2023 | Notice Sent re: | |
| **Comment:** | COA | |
| 11/29/2022 | Complaint Filed | Christina Groff |
| **Comment:** | Filed by plaintiff Evergreen Investment Holdings, LLC. Filed against defendant Glasglow Equities, LLC, et al on complaint 11/29/22 | |
| 11/29/2022 | Filing Fee Paid by | Christina Groff |
| **Comment:** | $1435 ck paid on 03/27/23 | |
| 11/29/2022 | Civil Case Cover Sheet Filed | |
| 11/29/2022 | Certificate of Assignment Received | |

# Court Access Portal

**Superior Court of  California - County of San Bernardino**

**Case Summary (CIVSB2228148)**                                                          07/27/2023 18:21:44

## Hearings

| Department | Judge | Court Reporter | Type | Date | Time | Result |
|---|---|---|---|---|---|---|
| Department S26 - SBJC | Cohn, David | | Complex Case Management Conference | 8/22/2023 | 8:30AM | |

## Charges Disposition & PLEAS

| Count | Date | Details | Citation # | Jurisdiction |
|---|---|---|---|---|
| | | | | |
| | **Plea:** | - | | |

## Financial Transactions

| Total | $1,455.00 | Total Balance: | $0.00 |
|---|---|---|---|
| **Date** | **Charges** | **Payments** | **Credits** |
| 3/27/2023 | $435.00 | $0.00 | $0.00 |
| 3/27/2023 | $1,000.00 | $0.00 | $0.00 |
| 3/27/2023 | $0.00 | $1,000.00 | $0.00 |
| 3/27/2023 | $0.00 | $435.00 | $0.00 |
| 6/9/2023 | $20.00 | $0.00 | $0.00 |
| 6/9/2023 | $0.00 | $20.00 | $0.00 |
| **Total** | **$1,455.00** | **$1,455.00** | **$0.00** |

## Bonds

| Type | Description | Posted Date | Set Date | Amount |
|---|---|---|---|---|
| | | | | |

## Related Cases

| Case Number | Case Type | Case SubType | Description | Comments |
|---|---|---|---|---|
| | | | | |

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY
Gillian L. Wade, State Bar No. 229124
10990 Wilshire Boulevard, Suite 800, Los Angeles, CA 90024

TELEPHONE NO.: (310) 396-9600    FAX NO. *(Optional):* (310) 396-9635
E-MAIL ADDRESS: gwade@mjfwlaw.com
ATTORNEY FOR *(Name):* Plaintiff Christina Groff

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO

NOV 29 2022

BY: Michelle Gomez-Casillas, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
STREET ADDRESS: 247 West Third Street
MAILING ADDRESS: 247 West Third Street
CITY AND ZIP CODE: San Bernardino, CA 92415-0210
BRANCH NAME: San Bernardino District – Civil Division

CASE NAME:
Christina Groff v. Keurig Green Mountain, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: C I V S B 2 2 2 8 1 4 8 |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: <br> DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [X] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [X] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [X] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify):* One (1)
5. This case [X] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 28, 2022

Gillian L. Wade
_____
(TYPE OR PRINT NAME)                    ▶         _____
                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Page 2 of 2

1  **MILSTEIN JACKSON**
   **FAIRCHILD & WADE, LLP**
2  Gillian L. Wade, State Bar No. 229124
   gwade@mjfwlaw.com
3  Sara D. Avila, State Bar No. 263213
   savila@mjfwlaw.com
4  Marc A. Castaneda, State Bar No. 299001
   mcastaneda@mjfwlaw.com
5  10990 Wilshire Boulevard, 8th Floor
   Los Angeles, California 90024
6  Tel: (310) 396-9600
   Fax: (310) 396-9635

7

8

   *Attorneys for Plaintiff and the proposed Class*
9

10

11

12

13           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                   **COUNTY OF SAN BERNARDINO**

15

16  CHRISTINA GROFF, on behalf of herself and all      Case No.   CIVSB 2228148
    others similarly situated,
17                                                     **CLASS ACTION COMPLAINT**

18                  Plaintiff,
                                                       1.  Violation of the Magnuson-Moss Warranty
19                                                         Act, 15 U.S.C. §§ 2301, *et seq.*

20          vs.

21  KEURIG GREEN MOUNTAIN, INC., a
    Delaware corporation,
22
23                  Defendant.

24

25

26

27

28

---

- 1 -

CLASS ACTION COMPLAINT

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO

NOV 29 2022

BY: Michelle Gomez-Casillas, Deputy

Plaintiff Christina Groff ("Plaintiff"), through undersigned counsel, brings this Class Action Complaint against Defendant Keurig Green Mountain, Inc. ("Defendant" or the "Keurig"), and alleges the following based upon information and belief, except as to allegations pertaining to Plaintiff, which are based upon personal knowledge.

**INTRODUCTION**

1.     Plaintiff brings this action seeking injunctive and declaratory relief curtailing unlawful business practices related to consumer products designed, manufactured, distributed, sold, and warranted by Defendant.

2.     For years, Defendant has produced, marketed, and sold consumer goods, including the Keurig K-Mini Plus Coffee Maker (the "Product") at issue in this litigation. Defendant also provides consumers with a one-year warranty for its products ("Warranty").

3.     In so doing, Defendant made and continues to make multiple representations to consumers that the Warranty is subject to carveouts expressly prohibited by federal law.

4.     Specifically, Defendant states to consumers that their Warranty will be void if the consumers use third-party repair services to fix their products.

5.     Yet this type of warranty-voiding condition, where the warranty is "tied" to exclusive repair by the manufacturer, is expressly prohibited by the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("Magnuson-Moss," the "Act," or "MMWA"), and its implementing regulations 16 CFR §§ 700.1, *et seq.*

6.     Magnuson-Moss allows consumers to open their electronics without voiding the warranty, regardless of what the language of that warranty says. And this fact has far-reaching implications as manufacturers, such as Defendant, have stepped up their attempts to monopolize the device repair market.

7.     These intentional misrepresentations of law and fact are made to help manufacturers like Defendant maintain a monopoly on repairing the devices that they sell, and on manufacturing, marketing, and selling after-market parts and accessories. Most people won't attempt relatively simple, inexpensive repairs—or use inexpensive third-party repair services—if they believe that in doing so the manufacturer subsequently will refuse to honor the warranty.

- 2 -

8.      Plaintiff, individually and on behalf of all other similarly situated California consumers, seeks injunctive and declaratory relief against Defendant for its violations of Magnuson-Moss. Specifically, Plaintiff seeks to prevent Defendant from continuing to make material misrepresentations and omissions to California consumers as to their warranty rights, in violation of Magnuson-Moss.

**PARTIES**

9.      Plaintiff Christina Groff is a resident of San Bernardino County, California.  In July 2022, Plaintiff purchased the Product from Defendant, which was—and remains—subject to a warranty that Defendant states will be void if Plaintiff uses a third party for repair.

10.     Defendant Keurig Green Mountain, Inc. is a Delaware corporation headquartered in Frisco, Texas. In addition to a host of hot and cold drink brands, Defendant's primary consumer products are Keurig-branded coffee makers, and Defendant generally oversees all aspects of these products, including but not limited to their design, manufacture, marketing, and warranty services.

**JURISDICTION AND VENUE**

11.     This Court has personal jurisdiction over Defendant purposefully directs its conduct at California, transacts business in California, has substantial contacts with California, has engaged and is engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in California, and purposely availed itself of the laws of California.

12.     Defendant's activities in California gave rise to the claims identified herein, both suffered by Plaintiff and by members of the proposed Class.  Defendant introduces its products into the stream of commerce in California, including the products purchased by Plaintiff and the Class, each of which are subject to the unlawful Warranty giving rise to the claims of Plaintiff and the Class.

13.     Venue is proper in this Court because Defendant has conducted business and entered into transactions in this County, and the conduct at issue occurred in, and/or emanated from, this County. Moreover, Plaintiff resides in this County.

CLASS ACTION COMPLAINT

**EXCLUSIVE STATE COURT JURISDICTION PURSUANT TO 15 U.S.C. § 2310**

14.     Exclusive jurisdiction for this Action lies with this Court, pursuant to 15 U.S.C. § 2310.

15.     Magnuson-Moss authorizes injured consumers to bring suit for "legal and equitable relief…in any court of competent jurisdiction in any State." 15 U.S.C. § 2310(d)(1)(A).

16.     However, the Act imposes specific limitations on the exercise of jurisdiction by federal courts, stating that "no claim shall be cognizable" in federal district court "(A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id*. § 2310(d)(3)(A)-(C).

17.     In this Action, Plaintiff seeks equitable and declaratory relief individually and on behalf of all members of the Class, in the form of Defendant removing the provision in its Warranty that violates Magnuson-Moss's anti-tying provisions, in addition to nominal damages.  Under California law, nominal damages can be as low as $1 (*see, e.g., Avina v. Spurlock*, 105 Cal.Rptr. 198, 28 Cal.App.3d 1086 (Cal. App. 1972); *Belle Terre Ranch, Inc. v. Wilson*, 182 Cal.Rptr.3d 393, 232 Cal.App.4th 1468 (Cal. App. 2015), and in no event does Plaintiff or any member of the putative Class assert an individual claim for damages valued at $25 or greater.  Neither of the requirements for federal jurisdiction set forth under § 2310(d)(3)(A) or § 2310(d)(3)(B) is satisfied.

18.     Further, Plaintiff Christina Groff is the only named plaintiff in this action.  Because there are not one hundred named plaintiffs in this action, the requirement for federal jurisdiction set forth under § 2310(d)(3)(C) is not satisfied.

19.     Because none of the requirements for federal jurisdiction are satisfied under § 2310(d)(3), this Court has exclusive jurisdiction over this Action.

**COMMON FACTUAL ALLEGATIONS**

A.     **Magnuson-Moss and Its Prohibition of Tying Provisions in Consumer Warranties.**

20.     Magnuson-Moss is a consumer-protection law passed in 1975 to clarify how written warranties may be used when marketing products to consumers.[1]  Specific to this lawsuit, the law

---

[1] 15 U.S.C. §§ 2301, *et seq.*

CLASS ACTION COMPLAINT

prohibits warrantors from conditioning warranty coverage on the consumer's use of an article or service identified by brand, trade, or corporate name.[2]  More specifically, a warrantor cannot "condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty[)]."[3]

21.    The provision goes on to dissect an illustrative, violative statement—"This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts"—stating that it violates Magnuson-Moss in two ways: first, it impermissibly ties repairs to the manufacturer, but second, "*a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of 'unauthorized' articles or service.*"[4]

22.    It is important to note that Magnuson-Moss does not prohibit the warrantor from disclaiming liability for defects *caused* by unauthorized repairs, but the burden is on the manufacturer to prove that the unauthorized repair caused the defect.

23.    Finally, the FTC recently clarified that the disclaimer of liability does not need to be explicit.  Instead, "a warrantor would violate the MMWA if its warranty led a reasonable consumer exercising due care to believe that the warranty conditioned coverage 'on the consumer's use of an article or service identified by brand, trade or corporate name....'  Moreover, misstatements leading a consumer to believe that the consumer's warranty is void because a consumer used 'unauthorized' parts or service may also be deceptive under Section 5 of the FTC Act."[5]

24.    The animating purpose of Magnuson-Moss's anti-tying provision was explained by then-FTC-Chairman Lewis Engman in the early 1970s in the run-up to the Act's introduction:

---

[2] 15 U.S.C. § 2302(c).
[3] 16 C.F.R. § 700.10(c)
[4] *Id.* (emphasis added).
[5] Federal Trade Commission, *Final Action: Magnuson-Moss Warranty Act Interpretations; Rules Governing Disclosure of Written Consumer Product Warranty Terms and Conditions, Pre-Sale Availability of Written Warranty Terms, and Informal Dispute Settlement Procedures; and Ad Guides*, at p. 11 (May 22, 2015) (available at https://www.ftc.gov/system/files/documents/federal_register_notices/2015/05/150522mag-mossfrn.pdf) ("2015 FTC Final Action")

CLASS ACTION COMPLAINT

This [anti-tying] provision addresses the anticompetitive practice which the Commission has opposed in numerous court actions wherein a manufacturer uses a warranty unreasonably to tie his supplementary products or services to the warranted product. This leaves the consumer in the undesirable posture of losing his warranty protection if he purchases the supplementary items from another and perhaps less expensive source— even if he does so in complete ignorance of the warranty's provisions.[6]

25.    "In short," the FTC more recently reiterated, "[Magnuson-Moss's] anti-tying provision bars manufacturers from using access to warranty coverage as a way of obstructing consumers' ability to have their consumer products maintained or repaired using third-party replacement parts and independent repair shops."[7]

26.    In its Report accompanying to 2021 Financial Services and General Government Appropriations Bill, Congress specifically directed the FTC as follows:

*Consumer Repair Rights.*—The Committee is aware of the FTC's ongoing review of how manufacturers…may limit repairs by consumers and repair shops, and how those limitations may increase costs, limit choice, and impact consumers' rights under the Magnuson-Moss Warranty Act. Not later than 120 days after the enactment of this Act, the FTC is directed to provide to the Committee, and to publish online, a report on anticompetitive practices related to repair markets. The report shall provide recommendations on how to best address these problems.

27.    Subsequently, the FTC produced a report to Congress that "synthesized the knowledge gained from its July 16, 2019 workshop titled 'Nixing the Fix: A Workshop on Repair Restrictions' (the "Workshop"), public comments, responses to a Request for Empirical Research and Data, and independent research."[8] ("2021 FTC Report").

28.    Per the 2021 FTC Report, "[e]ven when a warranty does not explicitly require that repairs be performed by the original equipment manufacturer (OEM) using OEM parts, many manufacturers restrict independent repair and repair by consumers through [*inter alia*] Product designs that complicate or prevent repair;…Policies or statements that steer consumers to manufacturer repair networks;…[and] Disparagement of non-OEM parts and independent repair[.]"[9]

---

[6] Statement of Hon. Lewis A. Engman, Chairman, Federal Trade Commission, included in H. Rep. No. 93-17, at 58 (1973).
[7] FTC, *Nixing the Fix: An FTC Report to Congress on Repair Restrictions*, May 2021, at p. 5 (available at       https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf) (last accessed April 20, 2022) (hereinafter referred to as "2021 FTC Report")
[8] *Id.*
[9] *Id.*

- 6 -

29.     The 2021 FTC Report confirmed that MMWA-violative conduct was rampant in the marketplace:

> The Commission continues to receive reports of companies not complying with the MMWA. In response to staff's call for empirical research and comments related to the Workshop, several organizations reported that warranty tying continues to be prevalent in the marketplace. For example, the Education Fund of U.S. PIRG, the federation of state Public Interest Research Groups (PIRGs), submitted an October 2018 study analyzing warranties from 50 companies. U.S. PIRG concluded that 45 of the 50 companies had warranties that appeared to violate Section 102(c) of the MMWA. Likewise, the Specialty Equipment Market Association (SEMA) submitted a comment stating that it regularly receives complaints that automobile dealerships void automobile warranties if the dealership finds a specialty part (e.g., custom wheels) had been installed on the automobile, regardless of whether the specialty part caused the automobile to malfunction. Other commenters submitted information claiming that certain warrantors either expressly or by implication continue to condition warranty coverage of the use of particular products or services.
>
> …Tying is illegal where the effect is to impair competition and harm consumers in the market for either the tying product or the tied product.[10]

**B.      Defendant's Warranty Leads a Reasonable Consumer to Believe That Third-Party Repair is Prohibited.**

30.     Defendant's Warranty, and additional representations related thereto, lead consumers to believe that third-party repair will void the warranty.

31.     For example, Defendant's Warranty states, in pertinent part:

> Only the use of Keurig® K-Cup® brand pods and accessories will guarantee the proper functioning and lifetime of your Keurig® brewer. Any damage to or malfunction of your brewer resulting from the use of non-Keurig® pods and accessories may not be covered by this warranty or may result in a service fee if the damage or malfunction is determined to be caused by such use.
> …
> Nor does this warranty cover damages caused by use of non-Keurig® pods or accessories, services performed by anyone other than Keurig® or its authorized service providers, use of parts other than genuine Keurig® parts, or external causes such as abuse, misuse, inappropriate power supply, or acts of God.[11]

---

[10] *Id.*
[11] Keurig,      Brewer      Warranty      Information      (available      at https://support.keurig.com/?page=shell&shell=knowledge-article&kmContentId=1014732).

32.     While the above language is ambiguous as to whether the word "damages" modifies only "use of non-Keurig® pods or accessories," or modifies all subsequent clauses in the sentence, the common understanding among consumers is that non-authorized repair (i.e., third-party repair) will void the Warranty (indeed, "[o]nly the use of Keurig® K-Cup® brand pods and accessories will guarantee the proper functioning and lifetime of your Keurig® brewer."). A plethora of websites devoted to Keurig coffee makers draw this conclusion. *E.g.,*

33.     **"Fixing The K"** – a website devoted to "Keurig Troubleshooting" states "We want to highlight any repairs carried out on your brewer that Keurig does not do will void the warranty. So PLEASE DO NOT attempt any repairs on your machine if you are still under their warranty. We mention this in several places on our site, but we wanted to make sure you saw it here too." [12]

34.     **"Coffee Grump"** – in an article titled "Can I Fix My Keurig? A Realistic Guide," the author post the FAQ "What can void Keurig warranty?" and states, *inter alia*, "If you attempt to repair the unit, the warranty will be void."[13]

35.     **"My Virtual Coffee House"** – in an article titled "Understanding Your Keurig Warranty – What is in the fine print," the author explicitly cautions: "The big thing here we want to highlight is that any repairs that are carried out on your Keurig brewer that are not done by Keurig will make the warranty void. So PLEASE DO NOT attempt any repairs on your machine if you are still under their warranty."[14]

36.     **"Lucky Belly"** – in an article titled "10 Easy Steps To Disassemble A Keurig," the author writes "One word of warning: don't try your own repairs if your Keurig is still under warranty. Any attempts to fix it yourself will void the warranty."[15]

37.     **"Hunker"** – in an article titled "How to Reset a Keurig," the author identifies "simple reset procedures [that] may clear the malfunction on your Keurig's internal computer," but also

---

[12]  Fixing the K, "Keurig Warranty – Understanding Your Rights" (available at https://fixingthek.com/keurig-warranty-understanding-your-rights/)
[13]  Coffee Grump, "Can I Fix My Keurig? A Realistic Guide" (available at https://coffeegrump.com/a-realistic-guide-to-fixing-your-keurig/)
[14]  My Virtual Coffee House, "Understanding Your Keurig Warranty – What is in the fine print" (available at https://myvirtualcoffeehouse.com/understanding-your-keurig-warranty-what-is-in-the-fine-print)
[15]  Lucky Belly, "10 Easy Steps To Disassemble A Keurig," (available at https://www.luckybelly.com/how-to-take-apart-a-keurig/)

describes a conversation with a Keurig customer service representative, named Tyler, cautions that customers must call Keurig's technical support "prior to moving beyond the basic reset steps to avoid damaging the machine or voiding the warranty."[16]

38.   Keurig's representations in its Warranty are explicitly meant to convey that *any* third-party repair (and not simply damage related thereto) will void the Warranty. To confirm this fact, the public interest advocacy group US PIRG contacted Defendant's customer service and, posing as a Keurig customer, asked if third-party repair would void the Warranty. Defendant's representative unequivocally stated that it would.



Fig. 1[17]

[16] Hunker, "How to Reset a Keurig" (available at https://www.hunker.com/13408102/how-to-troubleshoot-a-keurig)
[17]
https://twitter.com/nProctor/status/1057313528103739392?s=20&t=BAzFcQCO2QMLieU6Ukhoe
A; *See, also* US PIRG, Warranties in the Void, (October 11, 2018) (available at https://uspirg.org/sites/pirg/files/reports/Warranties%20in%20the%20Void%20-%20U.S.%20PIRG%20Education%20Fund%20-%20Oct2018.pdf)

CLASS ACTION COMPLAINT

39.     All of the above is forbidden under Magnuson-Moss.  In 2018, the FTC "sent warning letters to six major companies that market and sell automobiles, cellular devices, and video gaming systems in the United States."[18]  Among the challenged provisions included the following statements:

- The use of [company name] parts is required to keep your . . . manufacturer's warranties and any extended warranties intact.
- This warranty shall not apply if this product . . . is used with products not sold or licensed by [company name].
- This warranty does not apply if this product . . . has had the warranty seal on the [product] altered, defaced, or removed.[19]

40.     The FTC further stated that companies should review additional promotional materials and representations surrounding their warranties, so as not to create confusion among consumers.[20]

41.     Despite the unambiguous requirements of Magnuson-Moss, Keurig continues to represent to its customers both explicitly and implicitly that third party repair—indeed, merely *opening* its products—will void the customer's Warranty. These Magnuson Moss-violative representations—which have been in effect for years—still lead consumers to believe that their warranties are voided by third party repairs.

**C.     The Significance of Third-Party Repair of Consumer Products.**

42.     Beyond unlawfully proscribing customers' federal consumer protection rights, Defendant's conduct further harms consumers by stifling the third-party repair industry, thereby allowing Defendant (and comparable device manufacturers who engage in similar practices) a monopolistic grasp on the repair of its own products. This harms consumers in multiple ways.

43.     First, the stifling of competition drives up the cost of repair and limits a consumer's ability to have their products fixed in a timely manner.  Commonly, a warrantor's authorized service centers will have wait times that are untenable for devices that a consumer regularly relies on.  In one example, a consumer's refrigerator had a faulty compressor and the warrantor (LG) told her that its

---

[18] FTC, "FTC Staff Warns Companies that It Is Illegal to Condition Warranty Coverage on the Use of Specified Parts or Services," (April 10, 2018) (available at https://www.ftc.gov/news-events/news/press-releases/2018/04/ftc-staff-warns-companies-it-illegal-condition-warranty-coverage-use-specified-parts-or-services)
[19] *Id.*
[20] *Id.*

1  authorized servicers could not fix the appliance for up to a month.[21]  Obviously, a household cannot

2  do without refrigerated food for a month, but there are countless other appliances and devices that we

3  rely on daily, and doing without them for weeks—or even days—can cause profound disruptions in

4  our daily lives.

5      44.    This problem has become only more acute in the wake of the pandemic, when appliance

6  repair demand surged. Use of home appliances drastically increased as people are home more, and

7  fewer people buying new appliances as both retail operations were restricted and the supply chain

8  was interrupted by COVID-19.[22]  The rise in repair needs in turn leads to delays in warranty service.

9  When consumers are unable to get a necessary appliance repaired in a timely manner under warranty

10  terms, there is a real need to hire a third-party repair technician to solve the issues or attempt the repair

11  themselves.

12      45.    Second, it limits access to essential electronics, more broadly.  Consumer electronics,

13  in general, are the subject of ongoing shortages.  An Associated Press report found that the increased

14  demand and supply chain challenges posed by the pandemic had resulted in shortages around the

15  country.[23]  Kinks in the semiconductor supply chain are now posing an additional threat to the supply

16  of new products.[24]  Reducing barriers to repair allows older consumer products to be refurbished more

17  easily, thereby expanding the available supply.[25]

18      46.    These shortages notwithstanding, Defendant's anticompetitive practices enables it (and

19  similarly-situated companies) to force consumers to buy new products through planned obsolescence.

20  When it costs almost as much to repair an existing product as it does to buy a new version of the same

21  [21]  US PIRG, Warranties in the Void II, (April 8, 2021) at p. 18 (available at

22  https://uspirg.org/sites/pirg/files/reports/Warranties%20in%20the%20Void%20II_USPEF_April_20
21_Final.pdf)

23  [22] Youn, Soo. "Ovens, dishwashers and washing machines are breaking down like never before. But
there's    nobody    to    fix    them."    *The    Washington    Post*.    October    22,    2020.

24  https://www.washingtonpost.com/road-to-recovery/2020/10/22/appliance-repair-services-pandemic/
[23] Jocelyn Gecker and Michael Liedtke, *AP Exclusive: US Faces Back-To-School Laptop Shortage,*

25  (Aug. 22, 2020), https://apnews.com/article/01e9302796d749
b6aadc35ddc8f4c946.

26  [24]  Hyunjoo Jin, Douglas Busvine, and David Kirton, *Analysis: Global chip shortage threatens*
*production    of    laptops,    smartphones    and    more,*    Reuters,    (Dec.    17,    2020),

27  https://www.reuters.com/article/us-chip-shortage-analysis/analysis-global-chip-shortage-threatens-
production-of-laptops-smartphones-and-more-idUSKBN28R0ZL.

28  [25] 2021 FTC Report, *see,* Note 8, *supra.*

product, consumers will likely opt to buy the new product. Whereas, in a repair marketplace where costs are lowered through competition, it is cheaper to repair an existing piece of electronics than to buy a new one.

47.     Against this backdrop of scarcity, it is more important than ever that consumers be allowed to maintain and repair their devices without restriction.

48.     To date, Defendant has done nothing to proactively alert consumers to their rights under federal law. Defendant's unlawful behavior, coupled with its failure to affirmatively alert consumers of their rights, has created and continues to create an ongoing injury.

## PLAINTIFF'S SPECIFIC ALLEGATIONS

49.     In July 2022, Plaintiff purchased a new Product, manufactured by Defendant. This Product was—and remains—subject to Defendant's Warranty.

50.     At present, Plaintiff is unable to repair her Product via a third party, independent repair service without purportedly voiding her Warranty. However, this condition of the Warranty is unlawful, and has caused Plaintiff injury.

51.     Further, Plaintiff anticipates buying a new Product in the future, and would consider purchasing a Product from Defendant, but does not wish to have her rights under Magnuson-Moss thwarted by Defendant's unlawful tying provisions in its Warranty.

## CLASS ALLEGATIONS

52.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth.

53.     Plaintiff brings this action on behalf of herself and all other similarly-situated persons as a class action pursuant to Code of Civil Procedure section 382.

54.     Plaintiff seeks to represent a class composed of and defined as follows (the "Class"):

All citizens of California who purchased a product subject to Defendant's Warranty within the Class Period.[26]

55.     Plaintiff reserves the right to modify or refine the Class definition based upon discovery

---

[26] As used herein, and subject to Plaintiff's reservation of rights to amend her definition, "Class Period" means one year prior to the date of filing of this Complaint, through the date of class certification.

1    of new information or in order to accommodate any concerns of the Court.

2         56.    **Ascertainable Class:** The members of the Class are readily ascertainable. The Class

3    definition identifies a group of unnamed plaintiffs by describing a set of common characteristics

4    sufficient to allow a member of that group to identify himself or herself as having a right to recover

5    based on the description. Other than by direct notice, alternatively proper and sufficient notice of this

6    action may be provided to Class members through notice published in newspapers or other

7    publications.

8         57.    **Numerosity:** The proposed Class is so numerous that joinder of all members would be

9    impracticable.  The precise number of Class members is unknown at this time but can be readily

10   determined from Defendant's records. Plaintiff reasonably estimates that the Class is likely to include

11   over a thousand members.

12        58.    **Commonality and Predominance:** A well-defined community of interest in the

13   questions of law or fact involving and affecting all members of the Class exists, and common

14   questions of law or fact are substantially similar and predominate over questions that may affect only

15   individual Class members. The questions of law and fact common to Plaintiff and the Class include,

16   among others, the following:

17            i.   Whether Defendant's acts and practices complained of herein violate Magnuson-Moss;

18                 and

19            ii.  the appropriate injunctive relief to ensure Defendant no longer illegally conditions its

20                 warranties on the exclusion of third-party repair.

21        59.    **Typicality:**  Plaintiff is a member of the Classes she seeks to represent. Plaintiff's

22   claims are typical of the Class members' claims because they all were injured as a result of

23   Defendant's violation of Magnuson-Moss.

24        60.    **Adequacy of Representation:** Plaintiff is an adequate representative of the Class she

25   seeks to represent and will fairly and adequately protect the interests of the Class. Plaintiff is

26   committed to the vigorous prosecution of this action and has retained competent counsel, experienced

27   in litigation of this nature, to represent her and the Class. There are no conflicts between Plaintiff and

28

1    the unnamed class members. Plaintiff anticipates no difficulty in the management of this litigation as

2    a class action.

3         61.    To prosecute this case, Plaintiff has chosen the undersigned law firm, which is very

4    experienced in class action litigation and has the financial and legal resources to meet the substantial

5    costs and legal issues associated with this type of litigation.

6         62.    **Superiority.** A class action is superior to individual actions in part because of the non-

7    exhaustive factors listed below:

8              i.      Joinder of all class members would create extreme hardship and

9                      inconvenience for class members as they reside throughout the state;

10             ii.     Individual claims by class members are impractical because the costs to

11                     pursue individual claims may exceed the value of what any one class member

12                     has at stake.  As a result, individual class members may have no interest in

13                     prosecuting and controlling separate actions;

14             iii.    There are no known individual class members who are interested in

15                     individually controlling the prosecution of separate actions;

16             iv.     The interests of justice will be well served by resolving the common disputes

17                     of potential class members in one forum;

18             v.      Individual suits would not be cost effective or economically maintainable as

19                     individual actions; and

20             vi.     This action is manageable as a class action.

21        63.    The Class is not so large that it would be unmanageable, and no difficulties are foreseen

22   providing notice to individual claimants. Class members can be readily identified using records and

23   information kept by Defendant in the usual course of business and within its control.

24        64.    **Final Declaratory or Injunctive Relief.**  Plaintiff also satisfies the requirements for

25   maintaining a class seeking declaratory and/or injunctive relief.  Defendant has acted or refused to act

26   on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief

27   appropriate with respect to the proposed Class as a whole.

28

CLASS ACTION COMPLAINT

1

2

**CAUSE OF ACTION**
**(Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. §§ 2301, *et seq.*)**

3       65.     Plaintiff hereby incorporates by reference each of the preceding allegations as if fully

4    set forth herein.

5       66.     Plaintiff and Class members are "consumers" as defined in MMWA, 15 U.S.C. §

6    2301(3).

7       67.     Defendant is a "warrantor" as defined in MMWA, 15 U.S.C. § 2301(5).

8       68.     Defendant's Warranty is a "written warranty" as defined in MMWA, 15 U.S.C. §

9    2301(6).

10      69.     Defendant's products are "consumer products," as defined in MMWA, 15 U.S.C. §

11   2301(1).

12      70.     Consistent with, *inter alia*, 15 U.S.C. § 2302(c) and 16 C.F.R. § 700.10, Defendant may

13   not prohibit third-party repair as a condition of its Warranty.  Nor may Defendant make statements that

14   would lead a reasonable consumer exercising due care to believe that the warranty conditioned

15   coverage on the consumer's use of an article or service identified by brand, trade or corporate name

16   unless that article or service is provided without charge to the consumer. 16 C.F.R. § 700.10; *see, also*

17   2015 FTC Final Action at 11[27].

18      71.     Yet this is precisely what Defendant does through the conduct complained of herein.  This

19   includes, *inter alia*, its representation that consumers must "[o]nly the use of Keurig® K-Cup® brand

20   pods and accessories" and that the Warranty does not cover "services performed by anyone other than

21   Keurig® or its authorized service providers, [or] use of parts other than genuine Keurig® parts[.]"[28]

22   This also includes Defendant's customer service representatives instructing consumers that repair may

23   or will void the Warranty.[29]

24      72.     The FTC has stated, either directly through statute and regulation or through guidance,

25   that such representations violate Magnuson-Moss and its ant-tying provisions.

26      73.     Defendant's noncompliant warranties have harmed and continue to harm Plaintiff and

27

28   _____
[27] *See* Note 5, *supra.*
[28] *See,* Paragraph 31, *supra.*
[29] *See,* Paragraphs 37-38, *supra.*

the Class members by depriving them of the warranty benefits guaranteed to them by federal law. As a result of the Warranty's deficiencies, Plaintiff was denied the full benefit of her bargain in her purchase of the Product.

74.     Additionally, the Warranty illegally infringes on Plaintiff's full, lawful use of her property because she is unable to repair her Product via a third party, independent repair service without purportedly voiding the Warranty.

75.     Plaintiff, Class members, and members of the general public have been harmed as a result of Defendant's unfair, unlawful, and fraudulent conduct alleged herein.

76.     As a result of such harm, Plaintiff and Class members are entitled to nominal damages, injunctive relief, and corresponding declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a.  Certify this case as a class action, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel to represent the Class;

b.  Find that Defendant's actions, as described herein, constitute violations of Magnuson-Moss;

c.  Award Plaintiff and the Class nominal damages;

d.  Enter judgment against Defendant for all injunctive, declaratory, and other equitable relief sought;

e.  Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action; and

f.  Grant such other legal and equitable relief as the Court may deem appropriate.

CLASS ACTION COMPLAINT

Dated: November 28, 2022

**MILSTEIN JACKSON
FAIRCHILD & WADE, LLP**

By: _____

Gillian L. Wade, Esq.
Sara D. Avila, Esq.
Marc A. Castaneda, Esq.

*Attorneys for Plaintiff and the Proposed Class*



**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN BERNARDINO**
San Bernardino District
247 West 3rd St
San Bernardino CA  92415
www.sb-court.org
909-708-8678

| COMPLEX- Class Action- Groff -v- Keurig Green Mountain, Inc | |
|---|---|
| **NOTICE OF CERTIFICATE OF ASSIGNMENT NEEDED** | Case Number |
| | CIVSB2228148 |

Milstein Jackson Fairchild & Wade, LLP
10990 Wilshire Blvd 8th Floor
Los Angeles CA  90024

Need to file Certificate of Assignment.

Please take notice:  a Certificate of Assignment was not provided for filing at the time of filing of Summons and Complaint.  Certificate of Assignment is a mandatory local form.  Please submit a completed Certificate of Assignment as soon as possible.

Date:  3/27/2023

Anabel Z. Romero, Court Executive Officer
By:  Michelle Gomez-Casillas

----------------------------------------------------------------------------------
----------------------------------------------------------------------------------

CERTIFICATE OF SERVICE

I am a Deputy Clerk of the Superior Court for the County of San Bernardino at the above listed address.  I am not a party to this action and on the date and place shown below, I served a copy of the above listed notice by:

☐   Enclosed in a sealed envelope mailed to the interested party addressed above for collection and mailing this date, following standard Court practices.

☐   Enclosed in a sealed envelope, first class postage prepaid in the U.S. mail at the location shown above, mailed to the interested party and addressed as shown above or as shown on the attached listing.

Executed on 3/27/2023 at San Bernardino

By:  _____
Michelle Gomez-Casillas, Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO

MAR 27 2023

BY: Michelle Gomez-Casillas, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
KEURIG GREEN MOUNTAIN, INC., a Delaware corporation,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CHRISTINA GROFF, on behalf of herself and all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Bernardino District – Civil Division
247 West Third Street, San Bernardino, CA 92415-0210

CASE NUMBER: *(Número del Caso):*
2 28 1 4 0

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Gillian L. Wade, Milstein Jackson Fairchild & Wade, LLP, 10990 Wilshire Blvd., Ste. 800, Los Angeles, CA 90024, Tel: (310) 396-9600

DATE: MAR 27 2023   Clerk, by   Michelle Gomez-Casillas   , Deputy
*(Fecha)*          *(Secretario)*                          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Keurig Green Mountain, Inc.
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* MAY 23 2023

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*



**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN BERNARDINO**
San Bernardino District
247 West 3rd St
San Bernardino CA  92415
www.sb-court.org
909-708-8678

| Complex- Class Action- Groff -v- Keurig Green Mountain, Inc | |
|---|---|
| IMPORTANT CORRESPONDENCE | Case Number |
| | CIVSB2228148 |

Milstein Jackson Fairchild & Wade, Llp
10990 Wilshire Blvd 8th Floor
Los Angeles CA  90024

From the above entitled court, enclosed you will find:

INITIAL COMPLEX ORDER AND GUIDELINES.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CERTIFICATE OF SERVICE

I am a Deputy Clerk of the Superior Court for the County of San Bernardino at the above listed address.  I am not a party to this action and on the date and place shown below, I served a copy of the above listed notice:

☐ Enclosed in a sealed envelope mailed to the interested party addressed above for collection and mailing this date, following standard Court practices.

☒ Enclosed in a sealed envelope, first class postage prepaid in the U.S. mail at the location shown above, mailed to the interested party and addressed as shown above or as shown on the attached listing.

☐ A copy of this notice was given to the filing party at the counter.

☐ A copy of this notice was placed in the bin located at this office and identified as the location for the above law firm's collection of file stamped documents.

Date of Mailing:  4/4/2023

I declare under penalty of perjury that the foregoing is true and correct.  Executed on 4/4/2023 at San Bernardino.

By:  Alfie Cervantes

Superior Court of California
County of San Bernardino
247 W. Third Street, Dept. S-26
San Bernardino, CA  92415-0210

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

APR 0 4 2023

BY _____ *alfie Cervantes* _____
ALFIE CERVANTES. DEPUTY

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN BERNARDINO, SAN BERNARDINO DISTRICT

| | |
|---|---|
| CHRISTINA GROFF | Case No.: CIVSB 2228148 |
| vs. | |
| KEURIG GREEN MOUNTAIN, INC. | **INITIAL CASE MANAGEMENT CONFERENCE ORDER** |

This case is assigned for all purposes to Judge David Cohn in the Complex Litigation Program, Department S-26, located at the San Bernardino Justice Center, 247 West Third Street, San Bernardino, California, 92415-0210.  Telephone numbers for Department S-26 are (909) 521-3519 (Judicial Assistant) and (909) 708-8866 (Court Attendant).

-1-

Revised 9/16/22

## SERVICE OF THIS ORDER

Plaintiffs' counsel is ordered to serve this Order on counsel for each defendant or, if counsel is not known, on each defendant within five days of the date of this Order. If the complaint has not been served as the date of this Order, counsel for plaintiff is to serve the summons and complaint along with this Order within ten days of the date of this Order.  Failure to serve this order may result in the imposition of monetary sanctions.

## THE INITIAL CASE MANAGEMENT CONFERENCE

An initial Case Management Conference (CMC) is scheduled for JUN 1 3 2023 at 9:00 a.m.  Counsel may attend the initial CMC either in person or remotely, via CourtCall.  Contact CourtCall at (888) 882-6878 () to schedule your appearance.  Audio or video appearances are available.  CourtCall may be used for all CMCs, motions, and other hearings.  In person attendance is not required at the initial CMC or at subsequent conferences or motions unless specifically ordered by the court.

Counsel for all parties are ordered to attend the initial CMC.  If there are defendants who have not yet made a general or special appearance, those parties who are presently before the court may jointly request a continuance of the initial CMC to allow additional time for such non-appearing defendants to make their general or special appearances.   Such a request should be made by submitting a Stipulation and Proposed Order to the Court, filed directly in Department S-26 (not in the clerk's office), no later than five court days before the scheduled hearing.

## RESPONSIVE PLEADINGS

Unless otherwise agreed by the parties, responsive pleadings are due as provided by statute.  There is no stay on the pleadings or motions pending the initial

-2-

Revised 9/16/22

CMC.  If, however, counsel agree to stay formal proceedings to facilitate settlement discussions or for other reasons, each defendant is directed to file either a Notice of General Appearance or a Notice of Special Appearance (if counsel intends to challenge personal jurisdiction).  The notices are for purposes of identification of counsel and preparation of a service list.  The filing of a Notice of General Appearance is without prejudice to any substantive or procedural challenges to the complaint (including subject matter jurisdiction), without prejudice to any denial or affirmative defense, and without prejudice to the filing of any cross-complaint.  The filing of a Notice of Special Appearance is without prejudice to any challenge to the court's exercise of personal jurisdiction.

## DISCOVERY

Unless all counsel agree otherwise, <u>discovery is stayed</u> pending the initial CMC. If the parties agree to conduct discovery in advance of the initial CMC, commencement and scope of discovery are governed by statute and prior court approval is not required.

## AGENDA FOR THE INITIAL CASE MANAGEMENT CONFERENCE

Counsel for all parties are ordered to meet and confer in person no *later* than fourteen days before the initial CMC to discuss the subjects listed below.  Counsel must be fully prepared to discuss the following "subjects for consideration" listed in California Rules of Court, rule 3.750, subdivision (b):

      (1)  Whether all parties named in the complaint or cross-complaint have been served, have appeared, or have been dismissed;

      (2)  Whether any additional parties may be added or the pleadings may be amended;

      (3)  The deadline for the filing of any remaining pleadings and service of any additional parties;

      (4)  Whether severance, consolidation, or coordination with other actions is desirable;

-3-

(5)  The schedule for discovery proceedings to avoid duplication and whether discovery should be stayed until all parties have been brought into the case;

(6)  The schedule for settlement conferences or alternative dispute resolution;

(7)  Whether to appoint liaison or lead counsel;

(8)  The date for the filing of any dispositive motions;

(9)  The creation of preliminary and updated lists of the persons to be deposed and the subjects to be addressed in each deposition;

(10)  The exchange of documents and whether to establish an electronic document depository;

(11)  Whether a special master should be appointed and the purposes for such appointment;

(12)  Whether to establish a case-based Web site and other means to provide a current master list of addresses and telephone numbers of counsel; and

(13)  The schedule for further conferences.

Counsel must also be fully prepared to address the following matters to the extent they are not embraced by the subjects listed in rule 3.750, subdivision (b):

1.  Any issues of recusal or disqualification;

2.  Any potentially dispositive or important threshold issues of law or fact that, if considered by the court, may simplify or further resolution of the case;

3.  Appropriate mechanisms for Alternative Dispute Resolution;

4.  A plan for the preservation of evidence and a uniform system for the identification of documents to be used throughout the course of this litigation, including discovery and trial;

5.  A discovery plan for the disclosure and production of documents and other discovery, including whether the parties elect to make automatic disclosures, patterned on Federal Rule of Civil Procedure 26(a) or otherwise;

**-4-**

6.  Whether it is advisable to conduct discovery in phases so that information needed to conduct meaningful ADR is obtained early in the case;

7.  Any issues involving the protection of evidence and confidentiality;

8.  The handling of any potential publicity issues;

9.   Any other issues counsel deem appropriate to address with the court.

## THE JOINT REPORT

Counsel are ordered to meet and confer, in person or by telephone or video conference, and to prepare a joint report for the initial CMC, to be filed in advance of the conference date.  Separate reports from each party are not allowed.  Judicial council form CMC statements are not allowed.

The joint report must be filed in the regular course in the Clerk's office in advance of the hearing, but to assure that the report is timely received in the department, a courtesy copy of the report should be emailed to jointcmcreports@sb-court.org.  This is a dedicated email address only for courtesy copies of joint reports.  It is not a substitute for filing documents, and any unauthorized documents sent to the dedicated email address will be discarded without review.  All counsel must be cc'd on the email to avoid ex parte communications.

The joint report must include the following:

1.  Whether the case should or should not be treated as complex;

2.  Whether additional parties are likely to be added and a proposed date by which all parties must be served;

3.  A service list (the service list should identify all primary and secondary counsel, firm names, addresses, telephone numbers, email addresses, and fax numbers for all counsel.)

-5-

4. Whether the court should issue an order requiring electronic service. Counsel should advise the court regarding any preferred web-based electronic service provider;

5. Whether any issues of jurisdiction or venue exist that might affect this court's ability to proceed with this case.

6. Whether there are applicable arbitration agreements, and the parties' views on their enforceability;

7. A list of all related litigation pending in this or other courts (state and federal), a brief description of any such litigation, including the name of the judge assigned to the case, and a statement whether any additional related litigation is anticipated;

8. A description of the major factual and legal issues in the case. The parties should address any contracts, statutes, or regulations on which claims or defenses are based, or which will require interpretation in adjudicating the claims and defenses;

9. The parties' tentative views on an ADR mechanism and how such mechanism might be integrated into the course of the litigation;

10. A discovery plan, including the time needed to conduct discovery and whether discovery should be conducted in phases or limited (and, if so, the order of phasing or types of limitations). With respect to the discovery of electronically stored information (ESI ), the plan should include:

    a. Identification of the Information Management Systems used by the parties;

**-6-**

b.  The location and custodians of information that is likely to be subject to production (including the identification of network and email servers and hard-drives maintained by custodians);

c.  The types of ESI that will be requested and produced, e.g. data files, emails, etc.;

d.  The format in which ESI will be produced;

e.  Appropriate search criteria for focused requests.

f.  A statement whether the parties will allow their respective IT consultants or employees to participate directly in the meet and confer process.

11.  Whether the parties will stipulate that discovery stays or other stays entered by the court for case management purposes will be excluded in determining the statutory period for bringing the case to trial under Code of Civil Procedure Section 583.310 (the Five Year Rule).

12.  Recommended dates and times for the following:

a.  The next CMC (absent special circumstances, the court typically schedules the next CMC approximately six to eight months out);

b.  A schedule for any contemplated ADR;

c.  A filing deadline (and proposed briefing schedule) for any anticipated non-discovery motions.

d.  With respect to class actions, the parties' tentative views on an appropriate deadline for a class certification motion to be filed.

To the extent the parties are unable to agree on any matter to be addressed in the Joint Report, the positions of each party or of various parties should be set forth separately.  The parties are encouraged to propose, either jointly or separately, any

-7-

approaches to case management that they believe will promote the fair and efficient handling of this case.

Any stipulations to continue conferences or other hearings throughout this litigation must be filed with the court directly in Department S-26 (not in the Clerk's office), no later than five court days before the conference or hearing date.  Stipulations filed only in the Clerk's office or submitted late to the Department likely cannot be accommodated.

### NO OFFICIAL COURT REPORTER PROVIDED BY THE COURT

Due to the state-wide shortage of court reporters, the Court no longer provides an official Court Reporter to transcribe proceedings in this Department.  Parties who wish to have an official record of the proceedings in addition to a minute order must retain a private Certified Shorthand Reporter for the hearing and must submit a "Stipulation and Order to Use Certified Shorthand Reporter" to the court in the form appended to this Case Management Order.   If counsel are appearing for the hearing remotely, the Stipulation can be emailed to the Judicial Assistant for Department S-26 at jmorales@sb-court.org.  The Court will sign the Order appointing the Certified Shorthand Reporter as the official Court Reporter Pro Tempore.  Parties who do not retain a Certified Shorthand Reporter to be designated as an official Court Reporter Pro Tempore are deemed to have waived an official Court Reporter for the proceeding.

### JOINT REPORTS FOR SUBSEQUENT CONFERENCES

Counsel must submit a joint report for each conference after the initial CMC.  The report should address how the case has moved forward since the last conference, what needs to be accomplished in the future, and how the court can assist the parties move the case towards resolution.  As with the initial report, subsequent joint reports must be

-8-

filed in the regular course in the Clerk's office in advance of the hearing, but to assure

that the reports are timely received in the department, courtesy copies should be

emailed to jointcmcreports@sb-court.org.  This is a dedicated email address only for

courtesy copies of joint reports.  It is not a substitute for filing documents, and any

unauthorized documents sent to the dedicated email address will be discarded without

review.  All counsel must be cc'd on the email to avoid *ex parte* communications.

### INFORMAL DISCOVERY CONFERENCES

Motions concerning discovery cannot be filed without first requesting an informal

discovery conference (IDC) with the court.  Making a request for an IDC automatically

stays the deadline for filing any such motion.  IDCs are conducted by remote video

conference, using Zoom.    If counsel's computer (or other device) does not have

camera capability, an audio-only option is available.  Video appearance at the IDC,

however, is encouraged.  In-person attendance at the IDC is permissible only if all

counsel are appearing in person.  The Court will provide a link to join the remote

conference at the appointed time.  Please provide Department S-26's Judicial Assistant

((909) 521-3519) or Court Attendant ((909) 708-8866) with an e-mail address.  No

briefing is allowed for the IDC, but counsel (either jointly or separately) should lodge

(not file) a one page statement of the issues in dispute in Department S-26 no later than

the day before the IDC.  Any unauthorized briefing beyond the joint one page statement

of the issues will be disregarded by the Court.  All IDCs are off the record.

If all counsel agree, remote conferences are not limited to discovery issues;

counsel may address other matters with the court, with the understanding that the

-9-

1   conferences are off the record and that the court will make no orders absent agreement

2   among the parties.

3

4   Dated: _____ , 2023.

5

6

7   David Cohn,

8   Judge of the Superior Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Revised 9/16/22

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO**

Christina Groff

Case No.: CIVSB2228148

vs.

**CERTIFICATE OF ASSIGNMENT**

Keurig Green Mountain, Inc.

A civil action or proceeding presented for filing must be accompanied by this Certificate. If the ground is the residence of a party, name and residence shall be stated.

The undersigned declares that the above-entitled matter is filed for proceedings in the _____ District of the Superior Court under Rule131 and General Order of this court for the checked reason:

■ General      ☐ Collection

RECEIVED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO

APR 1 4 2023

Gloria Marin

| | **Nature of Action** | **Ground** |
|---|---|---|
| ☐ | 1. Adoption | Petitioner resides within the district |
| ☐ | 2. Conservator | Petitioner or conservatee resides within the district. |
| ☐ | 3. Contract | Performance in the district is expressly provided for. |
| ☐ | 4. Equity | The cause of action arose within the district. |
| ☐ | 5. Eminent Domain | The property is located within the district. |
| ☐ | 6. Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 7. Guardianship | Petitioner or ward resides within the district or has property within the district. |
| ☐ | 8. Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 9. Mandate | The defendant functions wholly within the district. |
| ☐ | 10. Name Change | The petitioner resides within the district. |
| ☐ | 11. Personal Injury | The injury occurred within the district. |
| ☐ | 12. Personal Property | The property is located within the district. |
| ☐ | 13. Probate | Decedent resided or resides within or had property within the district. |
| ☐ | 14. Prohibition | The defendant functions wholly within the district. |
| ☐ | 15. Review | The defendant functions wholly within the district. |
| ☐ | 16. Title to Real Property | The property is located within the district. |
| ☐ | 17. Transferred Action | The lower court is located within the district. |
| ☐ | 18. Unlawful Detainer | The property is located within the district. |
| ☐ | 19. Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| ☐ | 20. Other _____ | _____ |
| ☒ | 21. THIS FILING WOULD | NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above-designed district is:

Cause of Action arose in this District
NAME – INDICATE TITLE OR OTHER QUALIFYING FACTOR

23682 Lakeview Dr.
ADDRESS

Crestline
CITY

CA
STATE

92325
ZIP CODE

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was executed on April 14, 2023 at Los Angeles, CA _____, California.

_____
Signature of Attorney/Party



**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN BERNARDINO**
San Bernardino District
247 West 3rd St
San Bernardino CA  92415
www.sb-court.org
909-708-8678

| Complex- Class Action- Groff -v- Keurig Green Mountain, Inc | |
|---|---|
| **NOTICE OF RETURN OF DOCUMENT(S)** | Case Number |
| | CIVSB2228148 |

To:   Milstein Jackson Fairchild & Wade, Llp
       10990 Wilshire Blvd 8th Floor
       Los Angeles Ca  90024

Documents are being returned for the following reason(s):

      request for cont of initial cmc
      request has already been sent up to the dept

**Please keep this notice attached when resubmitting.  Thank you.**

Date:  6/9/2023                                                                    By:   Nicole O'Dwyer Fennell, Deputy Clerk

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CERTIFICATE OF SERVICE

I am a Deputy Clerk of the Superior Court for the County of San Bernardino at the above listed address.  I am not a party to this action and on the date and place shown below, I served a copy of the above listed notice by:

☒  Enclosed in a sealed envelope mailed to the interested party addressed above for collection and mailing this date, following standard Court practices.

☐  Enclosed in a sealed envelope, first class postage prepaid in the U.S. mail at the location shown above, mailed to the interested party and addressed as shown above or as shown on the attached listing.

☐  A copy of this notice was given to the filing party at the counter.

☐  A copy of this notice was placed in the bin located at this office and identified as the location for the above law firm's collection of file stamped documents.

Date of Mailing:  6/9/2023

I declare under penalty of perjury that the forgoing is true and correct.

Executed on 6/9/2023 at San Bernardino

By:   *Nicole O'Dwyer Fennell*
               Nicole O'Dwyer Fennell, Deputy Clerk

NOTICE RETURNING DOCUMENT(S)

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 1 2 2023

BY _____
JESSICA MORALES, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO

| | |
|---|---|
| CHRISTINA GROFF, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KEURIG GREEN MOUNTAIN, INC., a Delaware corporation,<br><br>Defendant. | Case No. CIVSB 2228148<br><br>[PROPOSED] ORDER RE REQUEST FOR CONTINUANCE OF INITIAL CASE MANAGEMENT CONFERENCE<br><br>Date: June 13, 2023<br>Time: 9:00 a.m.<br>Judge: Hon. David Cohn<br>Place: Dept. S-26<br><br>Complaint filed: November 28, 2022 |

- 1 -

[PROPOSED] ORDER RE REQUEST FOR CONTINUANCE

1

## ORDER

2          GOOD CAUSE APPEARING, the Court hereby continues the Initial Case Management

3   Conference from June 13, 2023 to _____8/70/23_____ at ____8:30 an____.

4

5   **IT IS SO ORDERED**.

6

7   Dated: ____6/12/23____                        _____

8                                                 Hon. David Cohn
                                                  Judge of the Superior Court
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

**[PROPOSED] ORDER RE REQUEST FOR CONTINUANCE**

1
**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
2  Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
3  Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
4  Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
5  10990 Wilshire Boulevard, 8th Floor
Los Angeles, California 90024
6  Tel: (310) 396-9600
Fax: (310) 396-9635
7

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 3 0 2023

BY: _____
Eilene Ramos, Deputy

8

9  *Attorneys for Plaintiff and the proposed Class*

10

11

12

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                      **COUNTY OF SAN BERNARDINO**

15

16  | CHRISTINA GROFF, on behalf of herself and all others similarly situated, | Case No. CIVSB2228148 |

17

18              Plaintiff,

19        vs.

20

21  KEURIG GREEN MOUNTAIN, INC., a
Delaware corporation,
22

23              Defendant.

24

Case No. CIVSB2228148

**FIRST AMENDED CLASS ACTION COMPLAINT**

1.  Violation of the Unfair Competition Law, "Unlawful" Prong, Cal. Bus. & Prof. C. §§ 17200, *et seq.*
2.  Violation of the Unfair Competition Law, "Unfair" Prong, Cal. Bus. & Prof. C. §§ 17200, *et seq.*

25

26

27

28

- 1 -

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Christina Groff ("Plaintiff"), through undersigned counsel, brings this First Amended Class Action Complaint against Defendant Keurig Green Mountain, Inc. ("Defendant" or the "Keurig"), and alleges the following based upon information and belief, except as to allegations pertaining to Plaintiff, which are based upon personal knowledge.

## INTRODUCTION

1.      Plaintiff brings this action seeking restitution, injunctive and declaratory relief curtailing unlawful business practices related to consumer products designed, manufactured, distributed, sold, and warranted by Defendant.

2.      For years, Defendant has produced, marketed, and sold consumer goods, including the Keurig K-Mini Plus Coffee Maker (the "Product") at issue in this litigation. Defendant also provides consumers with a one-year warranty for its products ("Warranty").

3.      In so doing, Defendant made and continues to make multiple representations to consumers that the Warranty is subject to carveouts expressly prohibited by federal law.

4.      Specifically, Defendant states to consumers that its Warranty will be void if the consumers use third-party repair services to fix their products.

5.      Yet this type of warranty-voiding condition, where the warranty is "tied" to exclusive repair by the manufacturer, is expressly prohibited by the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("Magnuson-Moss," the "Act," or "MMWA"), and its implementing regulations 16 CFR §§ 700.1, *et seq.*

6.      Magnuson-Moss allows consumers to open their electronics without voiding the warranty, regardless of what the language of that warranty says. And this fact has far-reaching implications as manufacturers, such as Defendant, have stepped up their attempts to monopolize the device repair market.

7.      These intentional misrepresentations of law and fact are made to help manufacturers like Defendant maintain a monopoly on repairing the devices that they sell, and on manufacturing, marketing, and selling after-market parts and accessories. Most people won't attempt relatively simple, inexpensive repairs—or use inexpensive third-party repair services—if they believe that in doing so the manufacturer subsequently will refuse to honor the warranty.

- 2 -

FIRST AMENDED CLASS ACTION COMPLAINT

8. Accordingly, Plaintiff brings this action on behalf of herself and the Class, for restitution, injunctive and declaratory relief against Defendant for its violations of the "Unlawful" Prong of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* (the "UCL"), predicated on its violations of Magnuson-Moss. Plaintiff seeks to prevent Defendant from continuing to make material misrepresentations and omissions to California consumers as to their warranty rights, in violation of Magnuson-Moss.

## **PARTIES**

9. Plaintiff Christina Groff is a resident of San Bernardino County, California. In July 2022, Plaintiff purchased the Product from Defendant, which was—and remains—subject to a warranty that Defendant states will be void if Plaintiff uses a third party for repair.

10. Defendant Keurig Green Mountain, Inc. is a Delaware corporation headquartered in Frisco, Texas. In addition to a host of hot and cold drink brands, Defendant's primary consumer products are Keurig-branded coffee makers, and Defendant generally oversees all aspects of these products, including but not limited to their design, manufacture, marketing, and warranty services.

## **JURISDICTION AND VENUE**

11. This Court has personal jurisdiction over Defendant purposefully directs its conduct at California, transacts business in California, has substantial contacts with California, has engaged and is engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in California, and purposely availed itself of the laws of California.

12. Defendant's activities in California gave rise to the claims identified herein, both suffered by Plaintiff and by members of the proposed Class. Defendant introduces its products into the stream of commerce in California, including the products purchased by Plaintiff and the Class, each of which are subject to the unlawful Warranty giving rise to the claims of Plaintiff and the Class.

13. Venue is proper in this Court because Defendant has conducted business and entered into transactions in this County, and the conduct at issue occurred in, and/or emanated from, this County. Moreover, Plaintiff resides in this County.

- 3 -

FIRST AMENDED CLASS ACTION COMPLAINT

1

2                            **COMMON FACTUAL ALLEGATIONS**

3    **A.    Magnuson-Moss and Its Prohibition of Tying Provisions in Consumer Warranties.**

4           14.    Magnuson-Moss is a consumer-protection law passed in 1975 to clarify how written

5    warranties may be used when marketing products to consumers.[1]  Specific to this lawsuit, the law

6    prohibits warrantors from conditioning warranty coverage on the consumer's use of an article or

7    service identified by brand, trade, or corporate name.[2]  More specifically, a warrantor cannot

8    "condition the continued validity of a warranty on the use of only authorized repair service and/or

9    authorized replacement parts for non-warranty service and maintenance (other than an article of

10   service provided without charge under the warranty[)]."[3]

11          15.    The provision goes on to dissect an illustrative, violative statement—"This warranty is

12   void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement

13   parts must be genuine 'ABC' parts"—stating that it violates Magnuson-Moss in two ways: first, it

14   impermissibly ties repairs to the manufacturer, but second, "*a warrantor cannot, as a matter of law,*

15   *avoid liability under a written warranty where a defect is unrelated to the use by a consumer of*

16   *'unauthorized' articles or service.*"[4]

17          16.    It is important to note that Magnuson-Moss does not prohibit the warrantor from

18   disclaiming liability for defects *caused* by unauthorized repairs, but the burden is on the manufacturer

19   to prove that the unauthorized repair caused the defect.

20          17.    Finally, the FTC recently clarified that the disclaimer of liability does not need to be

21   explicit.  Instead, "a warrantor would violate the MMWA if its warranty led a reasonable consumer

22   exercising due care to believe that the warranty conditioned coverage 'on the consumer's use of an

23   article or service identified by brand, trade or corporate name....'  Moreover, misstatements leading

24

25

26

27   [1] 15 U.S.C. §§ 2301, *et seq.*
     [2] 15 U.S.C. § 2302(c).
28   [3] 16 C.F.R. § 700.10(c)
     [4] *Id.* (emphasis added).

FIRST AMENDED CLASS ACTION COMPLAINT

a consumer to believe that the consumer's warranty is void because a consumer used 'unauthorized' parts or service may also be deceptive under Section 5 of the FTC Act."[5]

18.    The animating purpose of Magnuson-Moss's anti-tying provision was explained by then-FTC-Chairman Lewis Engman in the early 1970s in the run-up to the Act's introduction:

> This [anti-tying] provision addresses the anticompetitive practice which the Commission has opposed in numerous court actions wherein a manufacturer uses a warranty unreasonably to tie his supplementary products or services to the warranted product. This leaves the consumer in the undesirable posture of losing his warranty protection if he purchases the supplementary items from another and perhaps less expensive source—even if he does so in complete ignorance of the warranty's provisions.[6]

19.    "In short," the FTC more recently reiterated, "[Magnuson-Moss's] anti-tying provision bars manufacturers from using access to warranty coverage as a way of obstructing consumers' ability to have their consumer products maintained or repaired using third-party replacement parts and independent repair shops."[7]

20.    In its Report accompanying to 2021 Financial Services and General Government Appropriations Bill, Congress specifically directed the FTC as follows:

> *Consumer Repair Rights.*—The Committee is aware of the FTC's ongoing review of how manufacturers…may limit repairs by consumers and repair shops, and how those limitations may increase costs, limit choice, and impact consumers' rights under the Magnuson-Moss Warranty Act. Not later than 120 days after the enactment of this Act, the FTC is directed to provide to the Committee, and to publish online, a report on anticompetitive practices related to repair markets. The report shall provide recommendations on how to best address these problems.

21.    Subsequently, the FTC produced a report to Congress that "synthesized the knowledge gained from its July 16, 2019 workshop titled 'Nixing the Fix: A Workshop on Repair Restrictions'

---

[5] Federal Trade Commission, *Final Action: Magnuson-Moss Warranty Act Interpretations; Rules Governing Disclosure of Written Consumer Product Warranty Terms and Conditions, Pre-Sale Availability of Written Warranty Terms, and Informal Dispute Settlement Procedures; and Ad Guides*, at    p.    11    (May    22,    2015)    (available    at https://www.ftc.gov/system/files/documents/federal_register_notices/2015/05/150522mag-mossfrn.pdf) ("2015 FTC Final Action")
[6] Statement of Hon. Lewis A. Engman, Chairman, Federal Trade Commission, included in H. Rep. No. 93-17, at 58 (1973).
[7] FTC, *Nixing the Fix: An FTC Report to Congress on Repair Restrictions*, May 2021, at p. 5 (available at        https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf) (last accessed April 20, 2022) (hereinafter referred to as "2021 FTC Report")

- 5 -

FIRST AMENDED CLASS ACTION COMPLAINT

(the "Workshop"), public comments, responses to a Request for Empirical Research and Data, and independent research."[8] ("2021 FTC Report").

22. Per the 2021 FTC Report, "[e]ven when a warranty does not explicitly require that repairs be performed by the original equipment manufacturer (OEM) using OEM parts, many manufacturers restrict independent repair and repair by consumers through [*inter alia*] Product designs that complicate or prevent repair;...Policies or statements that steer consumers to manufacturer repair networks;...[and] Disparagement of non-OEM parts and independent repair[.]"[9]

23. The 2021 FTC Report confirmed that MMWA-violative conduct was rampant in the marketplace:

> The Commission continues to receive reports of companies not complying with the MMWA. In response to staff's call for empirical research and comments related to the Workshop, several organizations reported that warranty tying continues to be prevalent in the marketplace. For example, the Education Fund of U.S. PIRG, the federation of state Public Interest Research Groups (PIRGs), submitted an October 2018 study analyzing warranties from 50 companies. U.S. PIRG concluded that 45 of the 50 companies had warranties that appeared to violate Section 102(c) of the MMWA. Likewise, the Specialty Equipment Market Association (SEMA) submitted a comment stating that it regularly receives complaints that automobile dealerships void automobile warranties if the dealership finds a specialty part (e.g., custom wheels) had been installed on the automobile, regardless of whether the specialty part caused the automobile to malfunction. Other commenters submitted information claiming that certain warrantors either expressly or by implication continue to condition warranty coverage of the use of particular products or services.
>
> ...Tying is illegal where the effect is to impair competition and harm consumers in the market for either the tying product or the tied product.[10]

**B.  Defendant's Warranty Leads a Reasonable Consumer to Believe That Third-Party Repair is Prohibited.**

24. Defendant's Warranty, and additional representations related thereto, lead consumers to believe that third-party repair will void the warranty.

25. For example, Defendant's Warranty states, in pertinent part:

> Only the use of Keurig® K-Cup® brand pods and accessories will guarantee the proper functioning and lifetime of your Keurig® brewer. Any damage to or malfunction of your brewer resulting from the use of

---

[8] *Id.*
[9] *Id.*
[10] *Id.*

- 6 -

FIRST AMENDED CLASS ACTION COMPLAINT

> non-Keurig® pods and accessories may not be covered by this warranty or may result in a service fee if the damage or malfunction is determined to be caused by such use.
> …
> Nor does this warranty cover damages caused by use of non-Keurig® pods or accessories, services performed by anyone other than Keurig® or its authorized service providers, use of parts other than genuine Keurig® parts, or external causes such as abuse, misuse, inappropriate power supply, or acts of God.[11]

26. While the above language is ambiguous as to whether the word "damages" modifies only "use of non-Keurig® pods or accessories," or modifies all subsequent clauses in the sentence, the common understanding among consumers is that non-authorized repair (i.e., third-party repair) will void the Warranty (indeed, "[o]nly the use of Keurig® K-Cup® brand pods and accessories will guarantee the proper functioning and lifetime of your Keurig® brewer."). A plethora of websites devoted to Keurig coffee makers draw this conclusion. *E.g.*,

27. **"Fixing The K"** – a website devoted to "Keurig Troubleshooting" states "We want to highlight any repairs carried out on your brewer that Keurig does not do will void the warranty. So PLEASE DO NOT attempt any repairs on your machine if you are still under their warranty. We mention this in several places on our site, but we wanted to make sure you saw it here too."[12]

28. **"Coffee Grump"** – in an article titled "Can I Fix My Keurig? A Realistic Guide," the author post the FAQ "What can void Keurig warranty?" and states, *inter alia*, "If you attempt to repair the unit, the warranty will be void."[13]

29. **"My Virtual Coffee House"** – in an article titled "Understanding Your Keurig Warranty – What is in the fine print," the author explicitly cautions: "The big thing here we want to highlight is that any repairs that are carried out on your Keurig brewer that are not done by Keurig will make the warranty void. So PLEASE DO NOT attempt any repairs on your machine if you are still under their warranty."[14]

---

[11] Keurig, Brewer Warranty Information (available at https://support.keurig.com/?page=shell&shell=knowledge-article&kmContentId=1014732).

[12] Fixing the K, "Keurig Warranty – Understanding Your Rights" (available at https://fixingthek.com/keurig-warranty-understanding-your-rights/)

[13] Coffee Grump, "Can I Fix My Keurig? A Realistic Guide" (available at https://coffeegrump.com/a-realistic-guide-to-fixing-your-keurig/)

[14] My Virtual Coffee House, "Understanding Your Keurig Warranty – What is in the fine print" (available at https://myvirtualcoffeehouse.com/understanding-your-keurig-warranty-what-is-in-the-fine-print)

FIRST AMENDED CLASS ACTION COMPLAINT

30.     **"Lucky Belly"** – in an article titled "10 Easy Steps To Disassemble A Keurig," the author writes "One word of warning: don't try your own repairs if your Keurig is still under warranty. Any attempts to fix it yourself will void the warranty."[15]

31.     **"Hunker"** – in an article titled "How to Reset a Keurig," the author identifies "simple reset procedures [that] may clear the malfunction on your Keurig's internal computer," but also describes a conversation with a Keurig customer service representative, named Tyler, cautions that customers must call Keurig's technical support "prior to moving beyond the basic reset steps to avoid damaging the machine or voiding the warranty."[16]

32.     Keurig's representations in its Warranty are explicitly meant to convey that *any* third-party repair (and not simply damage related thereto) will void the Warranty.  To confirm this fact, the public interest advocacy group US PIRG contacted Defendant's customer service and, posing as a Keurig customer, asked if third-party repair would void the Warranty.  Defendant's representative unequivocally stated that it would.



---

[15]  Lucky  Belly,  "10  Easy  Steps  To  Disassemble  A  Keurig,"  (available  at  https://www.luckybelly.com/how-to-take-apart-a-keurig/)
[16]  Hunker, "How to Reset a Keurig" (available at https://www.hunker.com/13408102/how-to-troubleshoot-a-keurig)

FIRST AMENDED CLASS ACTION COMPLAINT

Fig. 1[17]

33.     All of the above is forbidden under Magnuson-Moss.  In 2018, the FTC "sent warning letters to six major companies that market and sell automobiles, cellular devices, and video gaming systems in the United States."[18]  Among the challenged provisions included the following statements:

- The use of [company name] parts is required to keep your . . . manufacturer's warranties and any extended warranties intact.
- This warranty shall not apply if this product . . . is used with products not sold or licensed by [company name].
- This warranty does not apply if this product . . .  has had the warranty seal on the [product] altered, defaced, or removed.[19]

34.     The FTC further stated that companies should review additional promotional materials and representations surrounding their warranties, so as not to create confusion among consumers.[20]

35.     Despite the unambiguous requirements of Magnuson-Moss, Keurig continues to represent to its customers both explicitly and implicitly that third party repair—indeed, merely *opening* its products—will void the customer's Warranty. These Magnuson Moss-violative representations—which have been in effect for years—still lead consumers to believe that their warranties are voided by third party repairs.

**C.     The Significance of Third-Party Repair of Consumer Products.**

36.     Beyond unlawfully proscribing customers' federal consumer protection rights, Defendant's conduct further harms consumers by stifling the third-party repair industry, thereby allowing Defendant (and comparable device manufacturers who engage in similar practices) a monopolistic grasp on the repair of its own products. This harms consumers in multiple ways.

37.     First, the stifling of competition drives up the cost of repair and limits a consumer's ability to have their products fixed in a timely manner.  Commonly, a warrantor's authorized service

---

[17] https://twitter.com/nProctor/status/1057313528103739392?s=20&t=BAzFcQCO2QMLieU6Ukhoe A;  *See, also* US PIRG, Warranties in the Void, (October 11, 2018) (available at https://uspirg.org/sites/pirg/files/reports/Warranties%20in%20the%20Void%20-%20U.S.%20PIRG%20Education%20Fund%20-%20Oct2018.pdf)

[18] FTC, "FTC Staff Warns Companies that It Is Illegal to Condition Warranty Coverage on the Use of Specified Parts or Services," (April 10, 2018) (available at https://www.ftc.gov/news-events/news/press-releases/2018/04/ftc-staff-warns-companies-it-illegal-condition-warranty-coverage-use-specified-parts-or-services)

[19] *Id.*

[20] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

centers will have wait times that are untenable for devices that a consumer regularly relies on.  In one example, a consumer's refrigerator had a faulty compressor and the warrantor (LG) told her that its authorized servicers could not fix the appliance for up to a month.[21]  Obviously, a household cannot do without refrigerated food for a month, but there are countless other appliances and devices that we rely on daily, and doing without them for weeks—or even days—can cause profound disruptions in our daily lives.

38.  This problem has become only more acute in the wake of the pandemic, when appliance repair demand surged.  Use of home appliances drastically increased as people are home more, and fewer people buying new appliances as both retail operations were restricted and the supply chain was interrupted by COVID-19.[22]  The rise in repair needs in turn leads to delays in warranty service.  When consumers are unable to get a necessary appliance repaired in a timely manner under warranty terms, there is a real need to hire a third-party repair technician to solve the issues or attempt the repair themselves.

39.  Second, it limits access to essential electronics, more broadly.  Consumer electronics, in general, are the subject of ongoing shortages.  An Associated Press report found that the increased demand and supply chain challenges posed by the pandemic had resulted in shortages around the country.[23]  Kinks in the semiconductor supply chain are now posing an additional threat to the supply of new products.[24]  Reducing barriers to repair allows older consumer products to be refurbished more easily, thereby expanding the available supply.[25]

---

[21] US PIRG, Warranties in the Void II, (April 8, 2021) at p. 18 (available at https://uspirg.org/sites/pirg/files/reports/Warranties%20in%20the%20Void%20II_USPEF_April_2021_Final.pdf)

[22] Youn, Soo. "Ovens, dishwashers and washing machines are breaking down like never before. But there's nobody to fix them." *The Washington Post.* October 22, 2020. https://www.washingtonpost.com/road-to-recovery/2020/10/22/appliance-repair-services-pandemic/

[23] Jocelyn Gecker and Michael Liedtke, *AP Exclusive: US Faces Back-To-School Laptop Shortage,* (Aug. 22, 2020), https://apnews.com/article/01e9302796d749b6aadc35ddc8f4c946.

[24] Hyunjoo Jin, Douglas Busvine, and David Kirton, *Analysis: Global chip shortage threatens production of laptops, smartphones and more,* Reuters, (Dec. 17, 2020), https://www.reuters.com/article/us-chip-shortage-analysis/analysis-global-chip-shortage-threatens-production-of-laptops-smartphones-and-more-idUSKBN28R0ZL.

[25] 2021 FTC Report, *see,* Note 8, *supra.*

- 10 -

FIRST AMENDED CLASS ACTION COMPLAINT

40.     These shortages notwithstanding, Defendant's anticompetitive practices enables it (and similarly-situated companies) to force consumers to buy new products through planned obsolescence. When it costs almost as much to repair an existing product as it does to buy a new version of the same product, consumers will likely opt to buy the new product.  Whereas, in a repair marketplace where costs are lowered through competition, it is cheaper to repair an existing piece of electronics than to buy a new one.

41.     Against this backdrop of scarcity, it is more important than ever that consumers be allowed to maintain and repair their devices without restriction.

42.     To date, Defendant has done nothing to proactively alert consumers to their rights under federal law. Defendant's unlawful behavior, coupled with its failure to affirmatively alert consumers of their rights, has created and continues to create an ongoing injury.

## PLAINTIFF'S SPECIFIC ALLEGATIONS

43.     In July 2022, Plaintiff purchased a new Product, manufactured by Defendant.  This Product was—and remains—subject to Defendant's Warranty.

44.     At present, Plaintiff is unable to repair her Product via a third party, independent repair service without purportedly voiding her Warranty.  However, this condition of the Warranty is unlawful, and has caused Plaintiff injury.

45.     Plaintiff suffered an economic injury because the unlawful tying provisions in the Warranty diminished the value of the Product.

46.     Alternatively, Plaintiff suffered an economic injury because she would not have paid as much as she did for the Product had the Warranty not contained unlawful tying provisions.

47.     Further, Plaintiff anticipates buying a new Product in the future, and would consider purchasing a Product from Defendant, but does not wish to have her rights under Magnuson-Moss thwarted by Defendant's unlawful tying provisions in its Warranty.

## CLASS ALLEGATIONS

48.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth.

FIRST AMENDED CLASS ACTION COMPLAINT

49.     Plaintiff brings this action on behalf of herself and all other similarly-situated persons as a class action pursuant to <u>Code of Civil Procedure</u> section 382.

50.     Plaintiff seeks to represent a class composed of and defined as follows (the "Class"):

All citizens of California who purchased a product subject to Defendant's Warranty within the Class Period.[26]

51.     Plaintiff reserves the right to modify or refine the Class definition based upon discovery of new information or in order to accommodate any concerns of the Court.

52.     **Ascertainable Class:** The members of the Class are readily ascertainable. The Class definition identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description. Other than by direct notice, alternatively proper and sufficient notice of this action may be provided to Class members through notice published in newspapers or other publications.

53.     **Numerosity:** The proposed Class is so numerous that joinder of all members would be impracticable.  The precise number of Class members is unknown at this time but can be readily determined from Defendant's records. Plaintiff reasonably estimates that the Class is likely to include over a thousand members.

54.     **Commonality and Predominance:** A well-defined community of interest in the questions of law or fact involving and affecting all members of the Class exists, and common questions of law or fact are substantially similar and predominate over questions that may affect only individual Class members. The questions of law and fact common to Plaintiff and the Class include, among others, the following:

i.    Whether Defendant's acts and practices complained of herein violate Magnuson-Moss;

ii.   Whether Defendant's acts and practices complained of herein violate the UCL;

iii.  Whether Plaintiff and the Class are entitled to restitution, and the proper measure of the loss; and

iv.   the appropriate injunctive relief to ensure Defendant no longer illegally conditions its

---

[26] As used herein, and subject to Plaintiff's reservation of rights to amend her definition, "Class Period" means from November 29, 2022 through the date of class certification.

FIRST AMENDED CLASS ACTION COMPLAINT

warranties on the exclusion of third-party repair.

55.    **Typicality:**  Plaintiff is a member of the Classes she seeks to represent. Plaintiff's claims are typical of the Class members' claims because they all were injured as a result of Defendant's violation of Magnuson-Moss and the UCL.

56.    **Adequacy of Representation:** Plaintiff is an adequate representative of the Class she seeks to represent and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent her and the Class. There are no conflicts between Plaintiff and the unnamed class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

57.    To prosecute this case, Plaintiff has chosen the undersigned law firm, which is very experienced in class action litigation and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

58.    **Superiority.**  A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

    i.    Joinder of all class members would create extreme hardship and inconvenience for class members as they reside throughout the state;

    ii.    Individual claims by class members are impractical because the costs to pursue individual claims may exceed the value of what any one class member has at stake.  As a result, individual class members may have no interest in prosecuting and controlling separate actions;

    iii.    There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

    iv.    The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

    v.    Individual suits would not be cost effective or economically maintainable as individual actions; and

    vi.    This action is manageable as a class action.

FIRST AMENDED CLASS ACTION COMPLAINT

59.     The Class is not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants. Class members can be readily identified using records and information kept by Defendant in the usual course of business and within its control.

60.     **Final Declaratory or Injunctive Relief**.  Plaintiff also satisfies the requirements for maintaining a class seeking declaratory and/or injunctive relief.  Defendant has acted or refused to act on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violations of the Unfair Competition Law – Unlawful Prong**
**California Bus. and Prof. Code § 17200, *et seq.***
**(On Behalf of the Class)**

61.     Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

62.     Plaintiff brings this claim under the 'unlawful' prong of the UCL, on behalf of herself and the Class, who were subject to Defendant's above-described unlawful conduct.

63.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein.

64.     The "Unlawful" Prong of the UCL "borrows" violations of other federal, state, or local laws and makes them independently actionable under the UCL.

65.     Defendant has violated and continues to violate the MMWA for the following reasons:

i.      Defendant is a "warrantor" as defined in MMWA, 15 U.S.C. § 2301(5);

ii.     Defendant's Warranty is a "written warranty" as defined in MMWA, 15 U.S.C. § 2301(6);

iii.    Defendant's products are "consumer products," as defined in MMWA, 15 U.S.C. § 2301(1);

iv.     Defendant has prohibited third-party repair as a condition of its Warranty, in violation of 15 U.S.C. § 2302(c) and 16 C.F.R. § 700.10;

v.      Defendant has made statements that would lead a reasonable consumer exercising due

- 14 -

FIRST AMENDED CLASS ACTION COMPLAINT

care to believe that the warranty conditioned coverage on the consumer's use of an article or service identified by brand, trade or corporate name unless that article or service is provided without charge to the consumer, in violation of 16 C.F.R. § 700.10 (*see, also* 2015 FTC Final Action at 11[27]);

66.     Defendant's unlawful conduct includes, *inter alia*, its representation that consumers must "[o]nly the use of Keurig® K-Cup® brand pods and accessories" and that the Warranty does not cover "services performed by anyone other than Keurig® or its authorized service providers, [or] use of parts other than genuine Keurig® parts[.]"[28] This also includes Defendant's customer service representatives instructing consumers that repair may or will void the Warranty.[29]

67.     The FTC has stated, either directly through statute and regulation or through guidance, that such representations violate Magnuson-Moss and its ant-tying provisions.

68.     Defendant's violations of Magnuson-Moss and its anti-tying provisions render it liable under the "Unlawful" Prong of the UCL.

69.     Plaintiff and members of the Class have lost money or property as a result of Defendant's violations because they overpaid for a product that contained unlawful tying provisions in the Warranty.

70.     Pursuant to section 17203 of the UCL, Plaintiff seeks an order enjoining Defendant from continuing to make material misrepresentations and omissions to California consumers as to their warranty rights, in violation of Magnuson-Moss.

71.     Additionally, Plaintiffs seek an order awarding Plaintiffs and the Classes restitution of the money wrongfully acquired by Defendant by means of the unlawful conduct alleged herein.

## SECOND CAUSE OF ACTION
### Violations of the Unfair Competition Law – Unfair Prong
### California Bus. and Prof. Code § 17200, *et seq.*
### (On Behalf of the Class)

72.     Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

---

[27] *See* Note 5, *supra.*
[28] *See,* Paragraph 25, *supra.*
[29] *See,* Paragraphs 31-32, *supra.*

- 15 -

FIRST AMENDED CLASS ACTION COMPLAINT

73.     Plaintiff brings this claim under the 'unfair' prong of the UCL, on behalf of herself and the Class, who were subject to Defendant's above-described unlawful conduct.

74.     Defendant's business practices, as alleged herein, are unfair because their conduct in selling products with warranties that unlawfully prohibit third party repair is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. The gravity of the harm to consumers is not outweighed by the utility of Defendant's conduct.

75.     Defendant's business practices are also unfair because they undermine public policy, which is tethered to specific statutory provisions, including the MMWA.

76.     Lastly, Defendant's business practices are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the injury because the Warranty was imposed on consumers on a 'take it or leave it' basis.

77.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described above.

78.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition.

79.     Pursuant to section 17203 of the UCL, Plaintiff seeks an order enjoining Defendant from continuing to make material misrepresentations and omissions to California consumers as to their warranty rights, in violation of Magnuson-Moss.

80.     Additionally, Plaintiffs seek an order awarding Plaintiffs and the Classes restitution of the money wrongfully acquired by Defendant by means of the unlawful conduct alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

    a.  Certify this case as a class action, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel to represent the Class;

    b.  Find that Defendant's actions, as described herein, constitute violations of Magnuson-Moss;

- 16 -

FIRST AMENDED CLASS ACTION COMPLAINT

1     c.  Find that Defendant's actions, as described herein, constitute violations of the UCL;

2     d.  Award Plaintiff and the Class restitution;

3     e.  Enter judgment against Defendant for all injunctive, declaratory, and other equitable relief

4         sought;

5     f.  Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this

6         action; and

7     g.  Grant such other legal and equitable relief as the Court may deem appropriate.

Dated: June 28, 2023

**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**

By: _____

Gillian L. Wade, Esq.
Sara D. Avila, Esq.
Marc A. Castaneda, Esq.

*Attorneys for Plaintiff and the Proposed Class*

- 17 -

FIRST AMENDED CLASS ACTION COMPLAINT